FREDERICK *v.* DETTARY ENGINEERING COMPANY.

1. FRAUDULENT CONVEYANCES—BULK SALES ACT—MANUFACTURER.

The bulk sales act does not govern a sale by a manufacturer since its purpose is to regulate sales of merchandise which constitutes the stock of mercantile establishments (2 Comp. Laws 1929, §§ 9545–9547).

2. SAME—BULK SALES ACT—CONSTRUCTION OF STATUTE—MERCHANDISE.

The key word in the construction of the bulk sales act is "merchandise," a word defined as "objects of commerce; whatever is usually bought and sold in trade or market by merchants" (2 Comp. Laws 1929, §§ 9545–9547).

3. STATUTES—CONSTRUCTION—REMEDIAL LEGISLATION.

Although an act is construed as remedial, hence liberally, nevertheless the court is controlled by obvious limitations in the language of the act.

4. FRAUDULENT CONVEYANCES—BULK SALES ACT—MERCHANDISE—MANUFACTURER.

Bulk sales act, limited in scope to the sale "of any part or the whole of a stock of merchandise or merchandise and fixtures" does not include sale of the business of a manufacturer since manufacturing involves the fabrication of goods and merchandising is the selling of such goods (2 Comp. Laws 1929, §§ 9545–9547).

Appeal from Wayne; Brennan (John V.), J. Submitted April 11, 1947. (Docket No. 61, Calendar No. 43,622.) Decided June 27, 1947.

Garnishment proceedings by Edwin C. Frederick, doing business as Frederick Steel Company, against Dettary Engineering Company, a Michigan corporation, principal defendant, and Allen Carr and

another, doing business as Linwood Industries, Ltd., garnishee defendants. Judgment for defendants. Plaintiff appeals. Affirmed.

*John McNeil Burns* (*Irving I. Boigon*, of counsel), for plaintiff.

*McCauley & Wilson*, for defendants.

BUSHNELL, J. Defendant Dettary Engineering Company, a Michigan corporation, had but one stockholder, Steve Dettar. It was engaged in the manufacture of tools, dies, fixtures, nuts and gauges, which it sold to various customers as ordered. Its articles of incorporation authorized it to "manufacture, purchase or otherwise acquire, to own, hold or use, to sell, assign, transfer or otherwise dispose of and to invest in and generally deal in and with goods, wares and merchandise of every nature and description."

Defendant ordered and received from plaintiff Edwin C. Frederick, *et al.*, doing business as Frederick Steel Company, a quantity of steel, for which it failed to pay. Frederick obtained a default judgment against Dettary Engineering Company for $1,120.82. Before this suit was started, Dettary Engineering Company sold substantially all of its assets to the garnishee defendants Allan Carr and Thomas Kemp, copartners doing business as Linwood Industries, Ltd. A bill of sale was executed covering all its "machinery and equipment, furniture and fixtures and inventory of steel and parts," with the exception of certain machines specified therein.

Plaintiffs, claiming that the sale from Dettary Engineering Company to Linwood Industries was void because of failure to comply with the bulk sales act, brought garnishment proceedings against Lin-

wood. It is admitted that the sale was made other than in the ordinary course of business and that no attempt was made to comply with the act.

From this sale Dettary Engineering Company received $11,000 from Linwood Industries, which was distributed largely among creditors who had liens on its property, and the balance of about $2,000 was paid to Steve Dettar. At the same time Dettary Engineering Company had a liquidated claim of about $8,100 against the government.

The trial judge filed a written opinion in which he discussed the bulk sales act and concluded that it was not applicable to sales by manufacturers. Plaintiffs have appealed from a judgment in favor of defendant of no cause of action. Section 1 of the bulk sales act (Act No. 223, Pub. Acts 1905 [2 Comp. Laws 1929, §§ 9545–9547 (Stat. Ann. §§ 19.361–19.363)]), reads in part as follows:

"The sale, transfer or assignment, in bulk, of any part or the whole of a stock of merchandise, or merchandise and the fixtures pertaining to the conducting of said business, otherwise than in the ordinary course of trade and in the regular and usual prosecution of the business of the seller, transferor or assignor, shall be void."

When the uniform sales act (Act No. 100, Pub. Acts 1913 [2 Comp. Laws 1929, § 9440 *et seq.*, Stat. Ann. § 19.241 *et seq.*]), was enacted, the bulk sales act was specifically excluded from its scope. See section 76 (b) thereof (2 Comp. Laws 1929, § 9517, Stat. Ann. § 19.318).

Appellants state the question presented for decision as follows:

"Is the sale of machinery, tools, furniture and fixtures used by the seller to manufacture tools, dies, fixtures, nuts, gauges, et cetera, to be sold to its customers, where there was also included an inven-

tory of steel and parts, void under the Michigan bulk sales act, where the sale was in bulk and otherwise than in the regular course of business of the seller?''

In 24 Am. Jur. p. 362, § 258, it is said:

''The bulk sales acts do not govern a sale by a manufacturer, their purpose being to regulate sales of merchandise which constitutes the stock of mercantile establishments.''

Professor Williston, in discussing bulk sales acts in general, states in his work on Sales (2d Ed.), § 643, p. 1616:

''The statutes are applicable to retail dealers but generally not to wholesale dealers or to manufacturers or persons not ordinarily engaged in trade. A few statutes are wider in their operation.''

In the early case of *Spurr* v. *Travis,* 145 Mich. 721 (116 Am. St. Rep. 330, 9 Ann. Cas. 250), which involved the validity of the bulk sales act, the Court answered the argument that it was class legislation ''because it limits its operation to merchants and does not include farmers, manufacturers, et cetera,'' by quoting from *McDaniels* v. *J. J. Connelly Shoe Co.,* 30 Wash. 549 (71 Pac. 37, 94 Am. St. Rep. 889, 60 L. R. A. 947):

'' 'It is well known that the business of retailing goods, wares, and merchandise is conducted largely upon credit, and furnishes an opportunity for the commission of frauds upon creditors not usual in other classes of business.' The act is not class legislation.''

The key word in the construction of the act is ''merchandise.''

''Merchandise is defined by Webster as 'objects of commerce; whatever is usually bought and sold in trade or market by merchants.' We think that

'merchandise,' as used in this act, must be construed to mean such things as are usually bought and sold in trade by merchants." *People's Savings Bank* v. *Van Allsburg,* 165 Mich. 524, 526.

This definition was applied in a case involving a sale of pool tables, the Court saying:

"The bulk sales law relates to a 'stock of merchandise or merchandise and the fixtures pertaining to the conducting of said business.' 'Merchandise' here means 'such things as are usually bought and sold in trade by merchants.'" *McPartin* v. *Clarkson,* 240 Mich. 390, 392 (54 A. L. R. 1535).

At first glance, *Patmos* v. *Grand Rapids Dairy Co.,* 243 Mich. 417, and *Michigan Packing Co.* v. *Messaris,* 257 Mich. 422, seem to cast doubt upon the *People's Savings Bank* and *McPartin Cases.* In the *Patmos Case,* on which the *Michigan Packing Company* opinion relies, the Court specifically found that the principal defendant, Grand Rapids Dairy Company, bought and sold merchandise. *Farrell* v. *Paulus,* 309 Mich. 441, involving a bowling alley, may possibly be classified with the cases just mentioned, but decision on a bill brought by a judgment creditor turned on the ground that the transfer of title was in fraud of creditors, citing 3 Comp. Laws 1929, § 13434 (Stat. Ann. § 26.971).

Notwithstanding our holdings that the act in question is remedial (see *Watkins* v. *Angus,* 241 Mich. 690, and *Michigan Packing Co.* v. *Messaris, supra*), we are nevertheless controlled by the obvious limitation of the language of the act. The applicability of such language to sales out of the ordinary course of business by manufacturers is fully annotated and discussed in 41 A. L. R. p. 1214.

A review of the authorities on this question may be found in *Broad Street National Bank* v. *Lit Bros.,*

306 Pa. 85 (158 Atl. 866).  Among those who hold
that the act is inapplicable to manufacturers are
the courts of Georgia, Arkansas, Wisconsin, Mis-
souri and Washington.  (See authorities therein
cited).  Michigan is included in this category by
reference to *Spurr* v. *Travis, supra.*  Illinois at
one time held that manufacturers were beyond the
scope of the act, but it was subsequently amended
in that State so as to include not only merchandise
"but other goods and chattels of the vendor's busi-
ness in bulk."  Illinois later held that the act as
amended applies to manufacturers.  Massachusetts
and Connecticut are among the minority who apply
the act to manufacturers.

The scope of our act is confined to the sale "of
any part or the whole of a stock of merchandise or
merchandise and fixtures."  There is a distinction
between merchandising and manufacturing.  The
first is the selling of fabricated goods, and the
second, fabrication of such goods.

As indicated in the *Spurr Case,* there are reasons
of policy for drawing a distinction between protect-
ing creditors of a merchandiser and those of manu-
facturers.

The Pennsylvania court said in *Broad Street Na-
tional Bank* v. *Lit Bros., supra:*

"There seems to be a tendency of late to broaden
such statutes and to give them a more liberal inter-
pretation, and if it is desirable for the bulk sale
statute of our State to embrace the products of a
manufacturer, the remedy is with the legislature."

Until the legislature acts, we, also, see no reason
to change our previously expressed views.

The judgment is affirmed, with costs to appellee.

CARR, C. J., and BUTZEL, SHARPE, BOYLES, REID,
NORTH, and DETHMERS, JJ., concurred.